Good morning, Your Honors. Peter Gold for Appellant Clarence Rose. Excuse me. I've been practicing criminal appellate law for almost 20 years now, and I've never seen another case close to this one in the breadth and egregiousness of trial counsel's acts of incompetence. I've never even come across a case in my research, and the Respondent doesn't cite one, in which an attorney at Gary Olive's experience level competently handled a murder trial such as this one. In fact, there's no real dispute that with Olive's lack of trial experience and recent admission to the bar, he was woefully unqualified to handle this case. Now, this Court has granted a certificate of appealability on 12 separate claims of ineffective assistance of counsel. The briefing discusses the finer points of these claims, and I certainly don't want to take up the Court's time rehashing those arguments. What I do want to emphasize, however, is that parsing out and considering each claim in a vacuum would overlook what this case is really about, the fundamental unfairness that Mr. Rose suffered due to Olive's numerous acts of ineffective representation during all stages of trial. Maybe what, you know, I think it's probably, I can't speak for anyone else, but obviously there were, let's just say that there was some ineffective assistance when we, and I'm using that generally on the first prong, where I would like to, some focus is on the second prong in terms of prejudice, because what I find from a lot of the failure to investigate that you raise, I'm not finding anything offered up saying that if that investigation, if that witness had been contacted, if that would have happened, this is what the witness would have said, and therefore that's how we can establish prejudice. And so it makes me, you know, I mean, you know, assuming that that's another counsel that's doing that, the record seems to be woefully inadequate in terms of saying what we would have presented. All right, Your Honor. I did want to first argue the chronic standard of prejudice, and I realize what Your Honor is probably referring to is Strickland. And I guess that maybe I can get to that in the course, if I can just, because I think that even when you're looking at the chronic standard, you're also looking at all the different acts that, or omissions that trial counsel, what he failed to do. And I think that when you consider all of those, even, that's. Well, I know you're arguing cumulative error, too. Right. Well, cumulative error, as you know, there are very few cases where people have prevailed on that. And you, I think you're arguing Harris and Mack, which were pre-AEDPA decisions, and we're AEDPA here. So there is a lot going on that way. But it's, you know, assuming that counsel that has come over on the habeas is competent and says they should have done A, B, C, and D, well, there still has to be at some point, we have to, that A, B, and C would have had to have presented something. So how do I know that counsel didn't go out and talk to A, B, C, and D, and A, B, and C, and D just dumped more guilty stuff on the defendant? I mean, there's, the record just is replete with that. Right. Well, Your Honor, granted. I mean, it's the elephant in the room. There may, in fact, be few cases that have found cumulative error and reversed for that. There, I believe, are few cases that are like this one. And the reason is, is that it's throughout the entire trial that, that, and before and throughout, that Olive failed to do so many of these things. And as a result, and you see in some of the cases where we talk about because of his omissions, there are things that just don't come up and things that were never discovered because of that. I think there are certain areas that we've tried to explain how, you know, looking at the more conventional Strickland standard, that these would have made a difference. Having, for instance, an eyewitness identification expert, having an investigator who would have gone out and looked at these different areas, there was evidence of potential. But wasn't there actually an investigator who had information, he had already investigated information that was exculpatory, that this attorney didn't even talk to, contact, or call as a witness? That's correct, Your Honor. So that's evidence. That's evidence by itself. And not only that, but that's. And it was exculpatory evidence. Correct. Right? And you have the attorney admitting, conceding all the deficiencies. Correct, Your Honor. Right? So how much more prejudice do we have to have? I think what I was trying to say was that there are various pockets of things such as that, that you can rely on by itself. But I'm interested, really. I'm really troubled by this. But one of the things that I find troubling is that I can't find a State court decision that discusses or Strickland or the standard that is the last reason decision looking at these claims of deficiency. The one that the two of you seem to agree on is that superior court decision, but that one doesn't use the Strickland standard. No. Not at all, no. So isn't this contrary to law? Exactly, yes. It is. It not only doesn't cite Strickland, it doesn't cite any case. No, but it says it doesn't even reference the Strickland standard. Exactly. It talks about, yes, there were all these errors, but it didn't preclude. It withdrew a meritorious defense. It didn't preclude Rose from doing a meritorious defense. That is not the standard. Exactly. I mean, a meritorious defense. What is that? So I don't understand why you're not agreeing to that. I think that's... I was getting to that. And as far as what Your Honor said about Cronick, the point is that neither the State court and for whatever reason the Federal district court nor Respondent even cites, let alone addresses Cronick. And I think that that works here. I think that Cronick's – but obviously I've already argued all that in the briefing and I can go over why I believe Cronick applies. But I believe that Your Honor's correct. It's an extremely troubling case. Now, it seems as though there was a prior counsel appointed by court. There were investigators. There was some fairly decent legal work going on. And then that attorney disappeared and he ended up – he himself retained this person. It was, what, six months out of his term? He had himself a straight lawyer. His family. A public defender that was doing a better job, right? Yeah. His family. Unfortunately, all too often, in my experience, defendants believe that a privately retained attorney no matter what is better than the public defender's office or the alternate public defender's office. And that just simply isn't the case. But, yes, the family in this case hired Mr. Rose. And I don't think there was a whole lot of money that exchanged hands. And that's probably one of the reasons that you can see from this that Olive didn't have money to hire an investigator or have an eyewitness identification expert and that sort of thing. But there was already an investigator and there was already information. Why didn't – I mean, he didn't get that. He didn't know what he was doing, Your Honor. And he not only didn't get that, but then you also have that particular investigator comes in and explains the additional areas that he would have pursued had he been – had he continued with the case. What had the investigator – what does the record show the investigator had to offer? He had evidence of as – well, he had evidence of witnesses that would have come forward to say who the real perpetrators were. And the detective in the case apparently didn't – didn't accept that evidence. He also had photographs of the scene. And so he had done investigation of what the scene was and he talked to various witnesses. And – But would the scene add anything to the – I'm sorry? Would the scene add something to it or not? It very well could have, Your Honor. I mean, this was a shooting that occurred at night. Mr. Olive, the attorney, didn't use any photographs. So I believe a lot of things could have been used. This case was all about – this case comes down to eyewitness identification, right? It does. It does, Your Honor. And it was at nighttime? Yes, it was. And these people had just come out of a bar and were intoxicated? Yes. And there were other people passing on the street, walking around at the time? There were a lot of people around, yes, Your Honor. And he was black and the other – I mean – It was fine. There was a lot of – I mean, Judge Kennedy asked an important question. I think you should be – didn't this Rice put in a declaration or testify? Yes, he did. He gave a lot of evidence. Yes. You should be telling Judge Kennedy what it is. You shouldn't be relying on me to tell. Well, yes. That's the kinds of things that I was trying to refer to as far as all the things that he would – that Rice had done some of these things, and he also indicated the things that he was going to do, which included investigating defense witnesses. He was going to talk to people at the bar. He was going to talk to some of the eyewitnesses. I guess the thing – the only thing that is troubling is when I was going to talk to somebody at the bar, then when you're later collaterally attacking the ineffectiveness in not pursuing that, you say if he had talked, he would have found Mr. X at the bar who said that, you know, the defendant was inside or he said something that's relevant to the case. And it's just – it's a difficult standard. I understand your opening statement that this is just a mess of a trial. I mean, it was – we ought to do much better than this. But it's – when I go through the record saying, okay, what would have – what have we been told would have happened if counsel had been up to it, I – I'll look again at the investigator and see if he had anything direct to say or if he had produced anybody who we can now know had something direct to say. Well, Judge Campbell, I'm saying Investigator Rice did some work after this case, after maybe two or three years afterwards. And quite frankly, one of the things that he testified to, and I believe he also declared, was that, you know, he did try to find new witnesses, but at that late date, he was unable to find them. I mean, obviously, it's going to be very difficult three years after a shooting to find people at the bar and that sort of thing. But I think what this Court needs to focus on is can you have confidence in the outcome of this trial, given all these errors and everything that occurred? And the answer is undoubtedly no. I understand that there are some problems in some of the evidence not being fully developed. But in a large respect, that's because of the horrible representation that Mr. Rose received. I'd like to ask you a question, because I'm going to ask it of the government about jurisdiction. And apparently, because we sent something out asking about it, because it's not obvious from the record that this was a timely appeal, and the government is saying that they're backing off of that. But I'm going to ask them in terms of why is it timely? Right. And, Your Honor, I sort of received the same information perhaps that you did as far as the government's motion. And my understanding is that he has looked at the records of the jail and when it was deposited, the notice of appeal. I personally, after I received your order, talked to my client and he is willing, if necessary, to sign a declaration as to him timely filing his notice of appeal in the prison system. Wasn't he represented by a lawyer at that time? No, he was not. Okay. Okay. If there are no further questions, I would sum up with saying that without a doubt, this Court should reverse the district court's denial of Mr. Rose's habeas corpus petition. May I please report, David Glassman, Deputy Attorney General, for the respondent. Ms. Scala had our first deal with the jurisdictional point. Yes, because even if you don't think, even though, I mean, we still have to be assured of that point. That's fine. I indicated in a footnote, in the first footnote in the Applebee's brief, that while, frankly, there was a question in my mind as to whether the appeal was timely, the question arose late in the game in terms of filing the brief, and I did not wish to delay filing of the brief to pursue it. The Court had already granted me additional time to file the brief. So I indicated there that the petitioner should be required to show cause to explain whether the appeal was timely. There was no further word from the petitioner, no indication or acknowledgement of this issue in the reply brief. I also indicated in that footnote that if the prison records did indicate that the appeal was untimely, that I would pursue a motion to dismiss the appeal. Upon reviewing the logs, which are cryptic in terms of what information is submitted, but did indicate submission to the Court during the relevant timeframe, I decided that I did not have enough of a record to pursue the likeness of the appeal. I can make those records available to the Court if the Court wishes to evaluate them by way of a supplemental filing. I responded to the Court's order with an ECF filing late last week, just because I didn't want to leave the Court wondering. Was he pro se at the time? So, I mean... He's writing to lawyers as well, as I recall, during that relevant timeframe. But when I see correspondence addressed to the Court, I can't definitively say or dispel the inference that he is writing the notice of appeal to the Court. What was the date? What was the date that he sent this? He timely dates the notice of appeal that he submits. It is received at an untimely point. But I don't know to what extent that delay was attributable to a delay within the prison system or within the mail. But as I indicated, I can furnish the same records that I reviewed to the Court with a declaration from the custodian. So, I'll turn, though, to the merits of the case, at least at this point. And I would like to discuss the, as the Court is well aware, there are two aspects, of course, to a Strickland claim. I'm not going to move to prejudice quite yet, because I think it is important to say some things about the first part. Let me ask you, what is the last reasoned decision of the State court? Is it the superior court decision? The, well, the last reasoned decision of the State court in terms of an explained ruling would be the. Well, that is what reasoned means, isn't it? Yes. I'm thinking of throwing my mind around it. When you give reasons, that's a reasoned decision. That would be the superior court order denying relief. Okay. Well, where in that order does the superior court apply the standard, the standard either in Cronick or in Strickland? Well, there are several answers. First is, there is a presumption in California and elsewhere that courts apply the law. So the fact that Strickland is incited, I don't think, allows the inference.  But he doesn't apply the standard in Strickland. He doesn't have to cite Strickland. I agree with that. Well, the case. Where does he apply the standard? Do you know what the standard in Strickland is? I do.  What is it? The standard in Strickland is whether or not, well, a reasonably competent attorney, first of all, would have conducted the, whatever the challenge task is. Okay. What's the prejudice standard? The prejudice standard is whether or not it is reasonably probable that the alleged omission of the attorney contributed or controlled the outcome of the case. All right. What does the superior court say that in its decision? The superior court does not, as I think I indicated, articulate the Strickland standard. And to review, the case was referred to the referee, if you will, or the magistrate, as a fact finder on various factual claims that the state court of appeal directed that court to make findings upon. That is a reasoned decision. That decision does cite Strickland and a variety of other cases. So the state appellate court tells the trial judge, and by the way, that court removes the original judge assigned to the case because it concludes in a published decision that the judge. Well, I know by Justice Gilbert. Yeah, I know. Okay. So clearly that court is cognizant of what is going on in the case in its view, and it also indicates in that preliminary order that it's very likely that it's a case in which there is a Strickland violation. That's the tentative ruling of the appellate court, citing all of these relevant authorities. Right. But that's not the reasoned decision you are asking us to look at. So we go to the superior court. Right. And the superior court says, well, I investigated this factually. Yes. And he wasn't – he was able to put on a meritorious defense. That's what he says. Well, the superior court, it's an extensive order. It's cited by the district court as well. But let me return to your original question. It goes back to the court of appeal. It doesn't end there. The court of appeal, after having a lot to say about the case at the front end, at the back end, when it goes back to that vision of the court of appeal, the court of appeal denies it silently. So is it your contention that we're supposed to be looking at that decision and not the superior court decision? It's not a mutually exclusive proposition. The point that I'm making is that that court, which we know has been discussing all of these issues and all of these legal policies in the context of this case, comes back to the case after it's in the superior court. We also know, because the Supreme Court has told us in Bell v. Cohn, that there is no requirement that a state court cite Strickland or expressly cite other federal law. Well, we know that, but that's assuming that the state court applies the correct standard. Well, I think the suggestion, therefore, that if this referee, if this fact finder got it wrong and doesn't acknowledge Strickland, that the state court of appeal couldn't have recognized that they were to apply Strickland when they conducted de novo review of those legal findings. They don't even say they did that. Did they? Isn't that just a one-line order? That's right. And under State law, it's de novo review of the legal interpretation. And under State law, the State supreme court then reviewed the case. And the district court then reviewed the case and found both the magistrate judge and the district judge.  findings. And one would have to say that none of them understood that this was a Strickland claim. So are you saying that's not really the standard that we do under AEDPA? Okay. You're not arguing that the January 1702 order from the Second Appellate District is the last recent decision, right? I am arguing that that is a denial on the merits of the claim. That is correct. That is a recent decision of the court. It is not rejecting the claim on procedural grounds. It is a decision that ---- No. It's not what we typically refer to when we're talking about what we mean when we're talking about a recent decision. Well, but that may be because a recent decision typically does not come to this court by way of a collateral evidentiary review in habeas corpus. It doesn't, Judge. I've seen many cases like that. I'm not disputing that the cases may have happened. My point is that if the court is contemplating a general rule, it typically arises once there has been an appellate decision by an appellate court and a silent denial by a higher state appellate court. I'm simply saying that this case followed a different path because this petitioner, unlike most, was afforded an evidentiary hearing. And I would like to talk about that hearing and these allegations, please. And that is that the idea that, you know, it's easy to say, and it's been said in this case for years, that there's all this stuff that he didn't do. I'm not trying to paint an unreasonably flattering portrait of this case. But the fact is, I'll go back to that State court of appeal decision, which, as I indicated, was certainly very skeptical of the lawyer's performance, of the original judge's role in reviewing the case, et cetera. And then there was an opportunity to document these claims. And what occurred was not much. And that is why there is a struggle to identify prejudice here. And so we can line up all of these claims against this lawyer that, for example, an eyewitness expert should have been produced at trial. Well, we know from the judge that heard the expert's testimony that it was not persuasive in this case. And we also know that there is no rule that a defense lawyer, whether he has five months of experience or 15 years of experience, calls an eyewitness expert just because there are factors that an ordinary jury could understand affected comprehension, like the hour, like their intoxication, et cetera. And we know that happened in this case because it was produced in this case. And I would like to read just a brief description of this case. And this is not, by the way, from a court. It's not from me. It's from the lawyers that represent him. We're referring to the trial. Mr. Rose presented a viable defense. Six separate witnesses, including two eyewitnesses to the shooting, testified he was not involved but was inside at a party when the shooting began. Further evidence indicated that he did not have his hair in braids that evening, as witnesses testified the shooter did. He was left-handed while an eyewitness testified the shooter held a gun in the right hand. The jury showed he gave serious consideration to his defense when requested a readback of the entire testimony of three defense eyewitnesses and portions of the testimony of the prosecution witness. And I would add, the jury deliberated in this alleged no-brainer, where he argues that it's a chronic case, meaning you didn't have a lawyer, you had a total denial of the right to counsel. The jury deliberated for six days. So there are all kinds of things that it is alleged that he didn't do. For example, we are told he didn't investigate for bias, the prosecution witnesses. I would ask the court to remember, this is a shooting of people who are leaving a bar. They walk out of the bar. The petitioner engages in some menacing contact with them. One of them basically tells them, we weren't looking at your companion. And three people testify that when he returns, he has a 9-millimeter gun, and he uses it to shoot Brian Bournefield in the head. So what is the bias that Mr. Olive, this hapless five-month lawyer, failed to investigate? We don't know that from the hearing. It was prior felonies or misdemeanors that would be for impeachment, which I think could still be done. And whether it's the prior felonies, whether it's the physician that supposedly could have testified that he literally could not walk away from the crime, whether it was all those things, we looked at a state evidentiary hearing that was conducted with not only present counsel but a new trial attorney appointed for the petitioner. And it's not there. So how one can continue. And the only reason, by the way, getting back to the physician, that issue, the only reason that there is a claim in this case that a doctor should have testified and should have shown that he was not ambulatory is that Mr. Olive made a motion for new trial and said he now had medical testimony. That's the last we hear of it. They have an evidentiary hearing. They have plenty of notice that the hearing is taking place. They have a judge that's going to listen to all of their claims. They don't put it on. So when we're told about these other witnesses and this other exonerating evidence, to simply say, well, with the passage of time, everything has spoiled, nothing is there, there is no indication in any of these briefs that I've seen as to what evidence spoiled that would exonerate him from the crime. We're told that he should have produced, that the lineup was suggested. The judge that heard the evidentiary hearing reviewed the photo lineups, found that they weren't suggested at all. The co-counsel at the trial testified he didn't have a basis to challenge the lineups. So, yes, there is a long list. And, yes, I'm not nominating this lawyer for any awards. But to just jump to the second prong, because there are 12 things that he didn't do, I think it's legitimate to question, first of all, how many of those things represent deficiency, as opposed to, yes, something that, in fact, he didn't do. What about if let's just assume that we all agree that there were things that counsel could have done. What would be your response to the cumulative error? The response is that the cumulative error is only as persuasive as the individual claims that are aggregated. And so, as counsel said today, and as he says in his brief, you know, that the respondent has sort of taken this hyper-technical position where we have to make that case on each claim. They ought to make their case on some of the claims, on some of the claims. Cumulative error is a rare instance in which, by mere volume of claims, there is a breakdown in the process sufficiently to doubt the outcome. But where you have claim after claim in which the allegation is there, but, you know, forget the harmless error argument. How about the harmless error evidence? What is the evidence in this case that would even remotely establish prejudice? You know, they should have pursued the claim that the police had a vendetta against him. Well, what is the officer's alleged vendetta? We are told it is that he tells someone that the defendant is a prominent member of the Clips gang, and the implication is, I don't like him. I don't. I remember. Was there a Pitchess motion? There was a Pitchess motion filed by trial counsel and denied by the trial court. And that, of course, is a motion to disclose prior misconduct by the officer. And the court, the trial judge in the original trial, found that there was no discoverable misconduct evidence. Was there anything offered with regard to the investigator who had worked earlier in the case? The evidence that was offered was offered in terms of the failure to make greater use of that investigator. But I'm not recalling in the record in State court, in the record of this Court's in the briefs, where the what witnesses who were overlooked had exonerating information. That is, again, along that long category of claims in which it is alleged that he didn't do it. And perhaps, as to some of those, he should have done it. But we are completely at a loss as to what it is that lawyers with years and resources and plenty of time never produced to improve upon the showing that he made. So, again, if I could just point to page 54 of that brief in this Court, the opening brief, and a salute to how close this case was, to say that at the same time, well, it was such a lopsided miscarriage of justice because, you know, this idiot was representing him. I don't think those are reconciled. I think I have about used my time, unless there are any questions, I'll submit it. Thank you. Thank you, counsel. Your Honor, just briefly, first of all, I just want to be clear. I did not handle, I was not one of the attorneys as part of the evidentiary hearing in this case. Counsel, can you address what is the main point of opposing counsel's argument, which is that what would he have been able to put on as evidence had this case been properly investigated and put on by the trial lawyer? Well, I think that what you had, at least in some areas, of course you have all the testimony from the eyewitness identification expert. You have the leads that apparently, that John Rice had as far as who committed the shooting that he didn't have because he didn't get his file and he hadn't spoken to him. Well, what did he have? What did John Rice have? Well, the evidence that came out that he testified to is that when he went to talk to Detective Cable, he had information that there were two witnesses who actually committed the shooting. Those witnesses, I'm not sure he named them during the proceeding. I think there was a Lavelle Edwards and there was a Alex Adams. I'm not sure. Why didn't your team follow up with those? Again, when you say my team, do you mean? Well, for the defendant to show that what those people would have said or even to show that. I don't think there is anything in the record even that anyone tried or said that they died or that they're gone or that. Well, again, I can tell you that I had said earlier, I know that Mr. Rice went out after the fact and tried to find some of these things. I think there was a witness that had died, actually. And, you know, he declared, for what it's worth, that at that late date, he didn't believe that he could find additional witnesses. So, unfortunately, you're left with what you're left with, and that is Olive's failure to do what he didn't do. You have Scott Frazier, which he testified as to the incompetence of the eyewitness identification, right? Yes. You have, what else do you have? I mean, you can see that we're trying to look at tangible things. Are there tangible pieces of evidence that had this attorney been competent, he would have been able to put on that would have had a reasonable probability of altering the outcome, which is the Strickland standard? Right. Your Honor, I can only give you the evidence that I've had and do the best I can with that and what's in the record. But I don't think you can ignore all the other areas of his incompetence when you're looking at these particular facts. Counsel talks about, well, look at the record. This was a close case. Well, yeah, this was a close case. And what does that point to? That points to the fact that had Olive done a good job, and we don't know how a competent how the evidence would have developed, had a competent attorney handled this, that could have made the difference in any one of these areas. It was a close case, undoubtedly, because there were six witnesses that were Alibi witnesses. Well, I don't know, I'm sure that that stuff just came into Olive's lap. I mean, undoubtedly, since they were people that Mr. Rose knew, they probably came to him. So, yeah, it was a close case in that respect. But it certainly wasn't a close case as far as the adversarial testing by Mr. Olive. And I don't think anybody can say with a straight face that, you know, his flagrant errors don't undermine our confidence in this trial. I just can't imagine that after reviewing the shocking details of Olive's representation, if any of us, that we would dare to have him represent us if we were accused of murder or any other trial. And a lot of that has to do with what you don't see here. My time is up, unless Your Honors have any other questions. Yeah, that's fine.  Yes, Your Honor. Would you please submit to us within 10 days or as soon as you can, if you have the records, just a copy of the records that indicate the date of mailing of the notice of appeal? Yes, Your Honor. All right. Your Honors, I would request also if it becomes an issue, one of the rules states that I can submit a declaration from my client as to when he did it. And if necessary, I can do that. All right. Within 10 days, you submit a declaration and you see. Well, okay. I'll do it as fast as I can. He's in prison and the whole prison system makes it a lot more difficult, but I'll try to submit it as quickly as I can. All right. Okay. All right. Rose versus Evans will be submitted.
judges: Canby, Wardlaw, Callahan